**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

PATTI S. CLATTERBUCK,

        Plaintiff,

v.                            **Civil Action No. 5:14CV43
(The Honorable Frederick P. Stamp)**

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

## REPORT AND RECOMMENDATION/OPINION

Patti S. Clatterbuck ("Plaintiff") brought this action pursuant to 42 U.S.C. §§ 405(g) for

judicial review of the final decision of the Commissioner of the Social Security Administration

("Defendant," and sometimes "Commissioner") denying Plaintiff's claim for disability insurance

benefits ("DIB") under Title II of the Social Security Act. The matter is awaiting decision on cross

motions for summary judgment and has been referred to the undersigned United States Magistrate

Judge for submission of proposed findings of fact and recommended disposition. 28 U.S.C. §

636(b)(1)(B); Fed. R. Civ. P. 72(b); L.R. Civ. P. 9.02.

## I. PROCEDURAL HISTORY

Plaintiff filed an application for DIB on March 25, 2011, alleging disability since October

1, 2009, due to fibromyalgia, migraine headaches, scoliosis, arthritis, dyslexia, degenerative disc

disease, and hypertension (R. 139-40. 155).[1] Plaintiff's applications were denied at the initial and

reconsideration levels (R. 64-65). Plaintiff requested a hearing, which Administrative Law Judge

Anthony J. Johnson, Jr. ("ALJ"), held on April 9, 2013 (R. 28). Plaintiff, represented by counsel,

---

[1] In her brief, Plaintiff has only presented arguments regarding her fibromyalgia. Accordingly, the undersigned has focused solely on Plaintiff's medical records concerning her physical limitations, not mental limitations, for the relevant time period.

Yvonne Costelloe, testified on her own behalf. Also testifying was Vocational Expert James Ganoe ("VE") (R. 28-63). On April 15, 2013, the ALJ entered a decision finding Plaintiff was not disabled (R. 10-18). Plaintiff timely filed a request for review to the Appeals Council (R. 23 ). On February 4, 2014, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner (R. 1-6).

## II. FACTS

Plaintiff was born on December 30, 1959, and was fifty-four (54) years old at the time of the administrative hearing (R. 10-18, 139). Plaintiff attained a GED and had past relevant work as a truck driver (R. 156-57).

Dr. Estigoy examined Plaintiff on January 5, 2010, for low back pain, depression, and hypertension. Plaintiff reported left arm numbness and neck strain and that she was "under stress due to being a caretaker to parents." Plaintiff reported low back pain, headaches, and right leg numbness. Dr. Estigoy found Plaintiff had tenderness at L4-L5 and carpal tunnel of the left ulna. Dr. Estigoy continued Plaintiff's prescriptions for Metoprolol, Lisinopril, and Paroxetene (R. 239).

On July 12, 2010, Plaintiff told Dr. Kisner that she had low back pain, with leg numbness, which had begun three to four (3-4) months earlier (R. 225). Upon examination, Dr. Kisner found Plaintiff had tenderness and stiffness in both "S1's." Plaintiff's seated straight leg raising test was negative. Her supine straight leg raising test was positive at forty-five (45) degrees on both the left and right. Her Braggart's was positive (R. 226). Plaintiff reported her pain was exacerbated by standing and alleviated by resting. Dr. Kisner noted her blood pressure was elevated. Dr. Kisner also noted Plaintiff medicated with Lisinopril, Metoprolol, and Paxil(R. 227).

On July 13, 2010, Dr. Kisner noted Plaintiff's spinal curve was normal; she had no disc

2

narrowing or spur formation; she had moderate scoliosis on the left; she had arthrosis at L4-S1; her hip articulations were normal (R. 230).

Plaintiff informed Dr. Kisner, on July 16, 2010, that her back pain was the same, her legs were "sore," and her knees hurt. He blood pressure was 160/104 (R. 225).

On July 21, 2010, Plaintiff complained of continued back pain, leg pain, knee pain, neck soreness, and headaches to Dr. Kisner. Her blood pressure was 148/108 (R. 225).

On July 27, 2010,[2] Dr. Estigoy diagnosed Plaintiff with carpal tunnel, left; hypertension; and pinched lumbar nerve. Plaintiff reported right hip pain, severe headaches due to sinuses, and severe low back pain. Plaintiff's right paravertebral region was tender. Her straight leg raising test was positive. Her blood pressure was 118/90. Dr. Estigoy noted Plaintiff was positive for a paravertebral sprain and continued Plaintiff's prescriptions for Metoprolol, Lisinopril, Darvocet, and Paroxetine. Dr. Estigoy instructed Plaintiff to medicate with Excedrin and use heat (R. 238).

Dr. Estigoy diagnosed Plaintiff with migraine headaches and hypertension on November 30, 2010. Dr. Estigoy prescribed Metoprolol, Lisinopril, Topamax, Clonazepam, Amitriptyline, and Paroxetine (R. 237).

Dr. Estigoy diagnosed Plaintiff with migraine headaches, hypertension, and fibromyalgia on December 21, 2010. Her blood pressure was 160/110. Plaintiff medicated with Clonazepam, Amitriptyline, Demerol, Metoprolol, and Lisinopril. Dr. Estigoy prescribed Demerol, Seroquil, and a trial of Treximet (R. 236).

Plaintiff presented to the emergency department of Winchester Medical Center on January

---

[2]The date on this record read "04/10/2010." That date was marked out and the "07/27/2010" date was written above it.

7, 2011, with complaints of back pain due to a fall (R. 209).  Plaintiff reported "burning down the right leg" and left leg numbness. Plaintiff medicated migraine headaches with Demerol (R. 210). Upon examination, Dr. Fowlkes found paravertebral muscle spasm and paresthesias down both legs. Dr. Fowlkes noted Plaintiff ambulated well, had no antalgic or ataxic gait, could stand on her toes, and had no muscle fasciculations.  Plaintiff's muscle strength was 5/5 (R. 211).  Plaintiff's CT scan was normal except for "[m]ild congenital stenosis distal lumbar spine" (R. 200, 229, 234, 242).  Dr. Fowlkes diagnosed acute lumbar spinal contusion and acute bilateral lower extremity neuropraxia and ordered a MRI (R. 211).  Plaintiff was released to home, where she cared for her parents; her symptoms had "improved" (R. 212, 214).

Plaintiff's January 10, 2011, lumbar spine MRI showed "[m]ildly abnormal MRI of the scan lumbosacral spine demonstrating: . . . bilateral facet hypertrophy noted at L2-3, L3-4 and L4-5.  The L5-S1 disc has transition features of the sacral region" (R. 208, 228, 233, 247).

On January 25, 2011, Plaintiff reported to Dr. Kisner that her right leg was "burning" and the skin was "sore."  She described her pain as "Charlie horse" like, which she had experienced for the past two (2) weeks. Plaintiff's blood pressure was 164/110 (R. 224).

Also on January 25, 2011, Dr. Estigoy diagnosed Plaintiff with migraine headaches, hypertension, and fibromyalgia. Dr. Estigoy noted Plaintiff was being examined due to a fall, which resulted in low back pain and burning sensation in her right hip and leg. Dr. Estigoy noted Plaintiff's straight leg raising tests were negative.  Plaintiff medicated with Amitriptyline, Seroquel, Lininopril, Metoprolol, Clonazepam, and Demerol (R. 235).

On January 28, 2011, Plaintiff told Dr. Kisner that her right leg pain was "better," but the "burning" sensation was still present.  Plaintiff's blood pressure was 130/82.  Her skin was "sore."

4

She had "slipped in driveway." (R. 224).

Dr. Kisner examined Plaintiff on January 31, 2011, and found her right leg was "better but still tender & burning" and her neck was "better still stiff/sore." Plaintiff's blood pressure was 180/120 (R. 223).

Dr. Estigoy diagnosed Plaintiff with low back pain, pre diabetes, hypertension, migraine headaches, and fibromyalgia on March 8, 2011. Plaintiff reported "all over" pain, which was "worse" in her lower back. Plaintiff's blood pressure was 140/80. Dr. Estigoy referred Plaintiff to a pain clinic and continued Plaintiff's prescriptions for Amitriptyline, Seroquel, Lisinopril, Metoprolol, Clonazepam, and Demerol (R. 232).

Dr. Estigoy diagnosed Plaintiff with obesity, controlled hypertension, low back pain, and fibromyalgia on May 3, 2011.[3] Plaintiff reported muscle spasms, back pain, knee pain, hip pain, and chronic headaches. Dr. Estigoy found Plaintiff had muscle cramps and spasms and pain in her knees, hips, and back. Plaintiff's blood pressure was 120/70; Dr. Estigoy found her hypertension was under control. Dr. Estigoy noted Plaintiff was obese. She had no edema. Dr. Estigoy continued Plaintiff's prescriptions for Seroquel, Lisinopril, Metoprolol, Clonazepam, and Demerol (R. 231).

On June 30, 2011, Dr. Estigoy completed a Routine Abstract Form - Physical of Plaintiff for disability purposes. Dr. Estigoy noted Plaintiff had been positive for migraine headaches, fibromyalgia, and degenerative disc disease for "about 10 years" (R. 250). Dr. Estigoy found Plaintiff's vision was abnormal; her lower extremities, bilaterally, were abnormal; she had muscle spasms (R. 251-52). Dr. Estigoy listed the following as Plaintiff's medications: Amitriptyline,

_____

[3]The date on this record read "12/30/09." That date was marked out and the "05/03/2011" date was written above it.

5

Seroquel, Lisinopril, Metoprolol, Clonazepam, Soma, and Demerol. Dr. Estigoy noted his diagnoses were hypertension, chronic low back pain, and fibromyalgia (R. 252). Dr. Estigoy found Plaintiff had edema (R. 253). Dr. Estigoy's medical statement was as follows: "[Plaintiff] has chronic back pain; headaches and fibromyalgia. She was a main caretaker for her parents. She did lifting; bending and stooping. Now her medical condition is worsen (sic) over the years. She has muscle cramps; spasms back; hip and has migraines. [Plaintiff] has pain most of the time along with headaches. Her blood pressure can be controlled with medications. Her MRI of January 2011, showed mild abnormality of bilateral facet hypertrophy L2-L3-L4-L5. She does c/o pain when stooping; bending. She should not lift any heavy objects" (R. 254-55).

Dr. Franyutti, a state-agency physician, completed a Physical Residual Functional Capacity Assessment of Plaintiff on July 15, 2011. Dr. Franyutti found Plaintiff could occasionally lift and/or carry twenty (20) pounds; frequently lift and/or carry ten (10) pounds; stand and/or walk for about six (6) hours in an eight (8) hour workday; sit for about six (6) hours in an eight (8) hour workday; and push/pull unlimited (R. 257). Dr. Franyutti found Plaintiff could occasionally climb ramps and stairs, balance, stoop, and crouch; Plaintiff could never climb ladders, ropes, and scaffolds, or kneel (R. 258). Dr. Franyutti found Plaintiff had no visual, manipulative, or communicative limitations (R. 259-60). Dr. Franyutti found Plaintiff was unlimited in her exposure to wetness, humidity, and noise; should avoid concentrated exposure to extreme heat and cold, vibration, fumes, odors, dusts, gases, and poor ventilation; and should avoid moderate exposure to hazards (R. 260). Dr. Franyutti found Plaintiff was partially credible (R. 261).

Dr. Estigoy diagnosed Plaintiff with controlled hypertension, obesity, fibromyalgia, and low back pain on August 9, 2011. Plaintiff reported knee pain, low back pain, and swelling in lower

extremities. Dr. Estigoy found Plaintiff's left knee joints were tender. Dr. Estigoy injected Plaintiff's left knee with Xylocaine and continued Plaintiff's prescriptions for Soma, Metoprolol, Demerol, and Paxil (R. 282).

On November 5, 2011, Dr. Parikshak reviewed Dr. Franyutti's July 15, 2011, Physical Residual Functional Capacity Assessment of Plaintiff and affirmed same (R. 279).

Dr. Estigoy diagnosed Plaintiff with osteoarthritis, "knees," headaches, and hypertension on December 6, 2011.[4] Plaintiff reported she had "chronic occipatal (sic) headache" and experienced knee and back pain. Plaintiff's blood pressure was 120/80. Dr. Estigoy's examination of Plaintiff produced normal results. He renewed Plaintiff's prescriptions for Soma, Paxil, Metoprolol, Lisinopril, and Demerol and ordered an x-ray of Plaintiff's knee joints (R. 281).

Dr. Estigoy diagnosed Plaintiff with osteoarthritis, hypertension, and low back pain on March 6, 2012. Plaintiff had a headache every day and her back and legs were "very painful." Plaintiff's blood pressure was 130/82. She was obese. Dr. Estigoy's examination of Plaintiff was normal. Dr. Estigoy continued Plaintiff's prescriptions for Paxil, Metoprolol, Demerol, and Soma; he provided a "trial" of Gabapentin (R. 280, 302).

Plaintiff's June 15, 2012, knee x-rays showed normal on the right and "Chondromatous lesion in the distal femur versus bone infarct" on the left. A MRI was recommended (R. 303).

Dr. Estigoy diagnosed Plaintiff with fibromyalgia, hypertension, osteoarthritis, and low back pain on June 26, 2012. Plaintiff reported migraine headaches with vomiting. Dr. Estigoy found "tenderness on all 18 points." Dr. Estigoy prescribed Ambien and continued Plaintiff's prescriptions

---

[4]The date on this record read "11/29/11." That date was marked out and the "12/6/11" date was written below it.

for Gabapentin, Paxil, Soma, Metoprolol, and Lisinopril (R. 301).

Dr. Estigoy diagnosed Plaintiff with fibromyalgia, hypertension, and osteoarthritis on August 7, 2012.[5]  Plaintiff reported she had headaches and knee and low back pain.  Dr. Estigoy's examination of Plaintiff was normal.  Dr. Estigoy ordered x-rays of both knees and CT scan of lumbar spine and prescribed Demerol (R. 299).

Plaintiff's August 27, 2012, MRI of her left knee showed a bony lesion "in the distal femur" that was "probably an enchondroma, or possibly a bone infarct."  There was no "aggressive appearance."  Plaintiff had "[f]ull thickness articular cartilage loss in some areas of the patella." There was a small area of "focal prepatellar bursitis."  It was recommended that Plaintiff "follow up" in six (6) months (R. 298, 315).

Plaintiff's August 27, 2012, lumbar spine CT scan showed no significant disc abnormality. Plaintiff's spinal canal and neural foramen were "widely patent."  There was "moderate" facet disease at L4-L5 (R. 300, 316).

Plaintiff reported to Dr. Kisner, on September 10, 2012, that she had low back pain, with radiating pain to and numbness in her right leg.  Plaintiff's blood pressure was 150/110 (R. 314).

Plaintiff reported to Dr. Kisner, on September 12, 2012, that she had back and right leg pain; her right leg pain was improved.  Plaintiff's blood pressure was 146/102 (R. 314).

Dr. Kisner examined Plaintiff on September 14, 2012, and found her lower back was "better but sore."  Dr. Kisner spoke to Plaintiff about the MRIs of her knee and back.  Plaintiff's blood pressure was 168/110 (R. 313).

---

[5]The date on this record read "07/31/21."  That date was marked out and the "08/7/2011" date was written above it.

Plaintiff presented to the emergency department of WVUH-East on September 15, 2012, with complaints of right flank pain. She had no radiculopathy. Plaintiff reported pain as "10/10" (R. 283). Upon examination, she had normal sensation and normal deep tendon reflexes in all extremities. Plaintiff was medicated with Toradol. Her abdominal and pelvic CT scan was normal. Her blood count and comprehensive metabolic panel were normal. She was diagnosed with "nonspecific" back pain and prescribed Lortab (R. 283-94, 305-08).

Dr. Estigoy diagnosed Plaintiff with facet joint pain, hypertension, fibromyalgia, and osteoarthritis on September 25, 2012. Dr. Estigoy found Plaintiff had marked tenderness at L4-L5 and right paravertebral pain. Dr. Estigoy prescribed Flexeril, Ambien, and Lidoderm (R. 297).

Dr. Estigoy diagnosed Plaintiff with facet joint disease, hypertension, anxiety, depression, and osteoporosis on October 30, 2012.[6] Plaintiff complained of back and joint pain in "multiple areas." She stopped medicating with Lisinopril "due to cough." Dr. Estigoy's examination produced normal results. Dr. Estigoy prescribed Dexa and continued Plaintiff's prescriptions for Gabapentin, Paxil, Soma, and Metoprolol (R. 296).

Dr. Estigoy diagnosed Plaintiff with facet joint disease, anxiety, hypertension, and osteoporosis on February 14, 2013. Except for a finding of obese abdomen, Dr. Estigoy's examination of Plaintiff produced normal results. Dr. Estigoy continued Plaintiff's prescriptions for Dexa, Gabapentin, Paxil, Soma, Demerol, and Metoprolol (R. 295).

Dr. Estigoy completed a Medical Assessment of Ability to Do Work-Related Activities (Physical) of Plaintiff on March 16, 2013. Dr. Estigoy listed Plaintiff's diagnoses as fibromyalgia,

---

[6]The date on this record read "10/23/12." The "23" was marked out and "30" was written below it.

9

lumbar facet disease, osteoarthritis of her knee joint, and obesity. Dr. Estigoy found Plaintiff could occasionally lift and/or carry up to five (5) pounds and could frequently lift and or carry up to two (2) pounds. Dr. Estigoy found plaintiff could stand and/or walk between one (1) and two (2) hours per day and could stand for thirty (30) minutes without interruption. Plaintiff's ability to sit was not impaired (R. 309). She could sit for six (6) hours in an eight (8) hour workday; she could sit for one (1) hour without interruption. Dr. Estigoy found Plaintiff could never climb, stoop, crouch, kneel, or crawl; she could occasionally balance. Plaintiff had no environmental restrictions as to her exposure to temperature extremes, chemicals, dust, noises, fumes, humidity, or vibrations. Dr. Estigoy found Plaintiff did have limitations to heights (R. 310). Dr. Estigoy found the environmental restrictions affected Plaintiff's activities because she was in "constant pain at multiple areas of body and loss of balance pose problems when patient is at increased heights." Dr. Estigoy found Plaintiff was limited in her ability to reach in all directions and handling; she was not limited in her ability to finger and feel. Dr. Estigoy elaborated that Plaintiff could frequently reach and occasionally handle, finger, and feel. Dr. Estigoy found Plaintiff's reaching was limited due to "generalized pain and arthritis of knees" (R. 311). Dr. Estigoy found Plaintiff had no visual or communication limitations (R. 312).

Dr. Estigoy wrote a letter, directed "To Whom It May Concern," on April 8, 2013. Dr. Estigoy wrote that Plaintiff had a history of facet disease at L4-L5. She had undergone a "previous cervical fusion due to disc herniation 2004." Plaintiff had also been diagnosed with hypertension and depression. Dr. Estigoy wrote that Plaintiff's left knee MRI showed "a bony lesion in the distal femur probably enchondroma," which caused Plaintiff pain. She could not stand, stoop, or sit "for long periods of time." Dr. Estigoy wrote Plaintiff had headaches "from migraines to hypertensive

type that can be daily." Dr. Estigoy wrote Plaintiff had these symptoms prior to 2011 (R. 317).

Administrative Hearing

At the April 9, 2013, administrative hearing, Plaintiff testified that she had to quit caring for her parents in October 2009, because her back "went out." Her daughter-in-law had to take over the care of her parents for her (R. 38). Plaintiff experienced muscle spasms in her back for three (3) or four (4) months, which caused her to stop taking care of her parents. Plaintiff stated she could "walk around the house a little bit" (R. 42). She could not stand long enough to prepare a sandwich because her back would begin to hurt. Plaintiff stated she had her "pain under control as long as [she] bab[ied] it," which included staying in bed most of the day or sitting in a chair and watching television. Plaintiff testified she could "hardly take a shower" because she could not stand that long. Plaintiff stated the pain did not "go away" (R. 43). Plaintiff testified she was "on her feet" for twenty (20) minutes per day. Plaintiff stated she had to change positions between sitting and lying down at two (2) hour intervals throughout the day (R. 44).

Plaintiff arrived at the administrative hearing in a motorized wheelchair, which she had been using for six (6) months. She did not use it at home (R. 45). It was not prescribed; it belonged to her mother. Plaintiff testified she could walk "maybe 100 feet" (R. 46). Plaintiff stated her pain was at a level eight (8) two or three (2-3) times per day. Plaintiff testified her medication treated her pain "pretty well" in that it "calm[ed]" the pain down "a lot," to a level four (4). Plaintiff reported no side effects to her medications. Plaintiff stated she had migraine headaches daily or two or three (2-3) times per day (R. 47).

When questioned by counsel, Plaintiff testified walking caused knee pain. Her legs would swell daily. Plaintiff stated she experienced leg numbness daily (R. 49).

11

The ALJ asked the VE the following hypothetical question:

Please consider a hypothetical individual the same age, educational -- and just to be clear, the age category changed during the period under my consideration. So she's a younger individual at onset, at her alleged onset date of October 1st, 2009. But by December, just a couple of months after that, she became closely approaching advanced age. This individual is able to lift, carry, push, and pull 20 pounds occasionally and 10 pounds frequently. Stand and/or walk six out of eight hours and sit six out of eight hours. Occasionally climb -- never climb ladders, ropes, or scaffolds. Occasionally balance. Occasionally stoop. Occasionally kneel. Never crouch. Occasionally crawl. And is able to tolerate frequent but not constant exposure to extreme heat, cold, vibrations, or respiratory irritants such as fumes, odors, gasses, dust, and the like. Can that individual perform [Plaintiff's] past individual work (R. 52).

The VE responded such an individual could perform the work of cashier (R. 52).

The ALJ modified his hypothetical question as follows:

Please consider the following additional restrictions. Due to pain, the individual's ability to stand . . . -- at one time was limited to 15 minutes and they would need to be able to change position between sitting and standing. Otherwise, as in my previous hypothetical. Would they still be able to perform cashier? (R. 52-53).

The VE stated that such a hypothetical person could not perform the work of cashier but could perform the work of garment sorter and laundry worker as folder (R. 53-54).

Evidence Submitted to the Appeals Council

On October 1, 2013, Plaintiff's attorney, *via* facsimile, provided a prescription, dated October 30, 2013, in which Dr. Estigoy prescribed a wheel chair for Plaintiff's use due to diabetic neuropathy and osteoarthritis in her back and knees (R. 27).

New Evidence to the Court

The administrative record contains a document that was not considered by either the ALJ or the Appeals Council. On December 23, 2013, Dr. Estigoy wrote a letter "To Whom It May Concern." Said letter was almost identical to the April 8, 2013 letter written by Dr. Estigoy. He

repeated that Plaintiff had a history of facet disease at L4-L5; had undergone a "previous cervical fusion due to disc herniation 2004"; had been diagnosed with hypertension and depression; had "a bony lesion in the distal femur probably enchondroma," as noted on an MRI; could not stand, stoop, or sit "for long periods of time"; and had headaches "from migraines to hypertensive type." Dr. Estigoy also wrote that Plaintiff had "new onset of uncontrolled diabetes mellitus," which was being treated. She had neuropathy in both legs and difficulty with her vision. Dr. Estigoy wrote that Plaintiff was permanently disabled (R. 25).

### III. ADMINISTRATIVE LAW JUDGE DECISION

Utilizing the five-step sequential evaluation process prescribed in the Commissioner's regulations at 20 C.F.R. § 404.1520 (2000), ALJ Johnson made the following findings:

1. The claimant last met the insured status requirements of the Social Security Act on December 31, 2011.

2. The claimant did not engage in substantial gainful activity during the period from her alleged onset date of October 1, 2009, through her date last insured of December 31, 2011 (20 CFR 404.1571 *et seq.*).

3. Through the date last insured, the claimant had the following severe impairments: facet joint disease, osteoporosis, migraines, and obesity (20 CFR 404.1520(c)) (R. 12).

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except the claimant must be afforded an opportunity to change positions between sitting and standing at intervals of 15 minutes when needed, while remaining on task. She can occasionally climb ramps and stairs but must never climb ladders, ropes or scaffolds. The claimant can occasionally balance, stoop, kneel, and

crawl.  She must never crouch.  The claimant can tolerate frequent but not constant exposure to extreme temperatures of heat and cold.  She is able to frequently but not constantly tolerate exposure to respiratory irritants such as dust, fumes, odors, gases and other pulmonary irritants.  The claimant is able to tolerate frequent but not constant exposure to vibration (R. 13).

6. Through the date last insured, the claimant was unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on December 30, 1959 and was 52 years old, which is defined as a younger individual age 18-49, on the date last insured.  The claimant subsequently changed age category to closely approaching advanced age (20 CFR 404.1563).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569 and 404.1569(a)) (R. 17).

11. The claimant was not under a disability, as defined in the Social Security Act, at any time from October 1, 2009, the alleged onset date, through December 31, 2011, the date last insured (20 CFR 404.1520(g)) (R. 18).

## IV.  DISCUSSION

### A. Scope of Review

In reviewing an administrative finding of no disability the scope of review is limited to determining whether "the findings of the Secretary are supported by substantial evidence and whether the correct law was applied." Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).  The Fourth Circuit held, "Our scope of review is specific and narrow.  We do not conduct a de novo

review of the evidence, and the Secretary's finding of non-disability is to be upheld, even if the court disagrees, so long as it is supported by substantial evidence." Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir.1986). Substantial evidence is "such relevant evidence as a reasonable mind might accept to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). Elaborating on this definition, the Fourth Circuit has stated that substantial evidence "consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'" Hays v. Sullivan, 907 F.2d at 1456 (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1968)). In reviewing the Commissioner's decision, the reviewing court must also consider whether the ALJ applied the proper standards of law: "A factual finding by the ALJ is not binding if it was reached by means of an improper standard or misapplication of the law." Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987).

## B. Contentions of the Parties

Plaintiff contends:

1.      The ALJ failed to apply Social Security Ruling ("SSR") 12-2p in finding that Plaintiff's fibromyalgia was not a medically determinable impairment.

(Plaintiff's Brief at 4-6.)

The Commissioner contends:

1.      The ALJ properly considered Plaintiff's alleged fibromyalgia and accurately assessed her RFC.

(Defendant's Brief at 5-7.)

## C. SSR 12-2p and Fibromyalgia

As her only claim for relief, Plaintiff argues that the ALJ failed to apply SSR 12-2p in finding

that her fibromyalgia was not a medically determinable impairment. (Plaintiff's Brief at 4.)

Specifically, Plaintiff asserts that the "ALJ failed to explain his consideration of . . . key evidence

supporting [her] diagnosis of fibromyalgia, and furthermore, failed to properly assess [her]

fibromyalgia as required under SSR 12-2p." (Id. at 6.) Defendant argues that the ALJ properly

considered Plaintiff's fibromyalgia. (Defendant's Brief at 5-7.)

As the Fourth Circuit has explained,

> [f]ibromyalgia is a rheumatic disease with . . . symptoms including "significant pain
> and fatigue," tenderness, stiffness of joints, and disturbed sleep. . . . Doctors
> diagnose fibromyalgia based on tenderness of at least eleven of eighteen standard
> trigger points on the body. . . . "People with rheumatoid arthritis and other
> autoimmune diseases, such as lupus, are particularly likely to develop fibromyalgia."
> . . . Fibromyalgia "can interfere with a person's ability to carry on daily activities."
> . . . "Some people may have such a severe case of fibromyalgia as to be totally
> disabled from working, but most do not."

Stup v. UNUM Life Ins. Co., 390 F.3d 301, 303 (4th Cir. 2004) (internal citations omitted). The

Social Security Administration describes fibromyalgia as a "complex medical condition

characterized primarily by widespread pain in the joints, muscles, tendons, or nearby soft tissues that

has persisted for at least 3 months." SSR 12-2p, 2012 WL 3104869, at *2 (July 25, 2012).

SSR 12-2p clarifies that to determine whether an individual suffers from fibromyalgia as a

medically determinable impairment, the Administration "cannot rely on the physician's diagnosis

alone." Id. Rather,

> [t]he evidence must document that the physician reviewed the person's medical
> history and conducted a physical exam. We will review the physician's treatment
> notes to see if they are consistent with the diagnosis of FM, determine whether the
> person's symptoms have improved, worsened, or remained stable over time, and
> establish the physician's assessment over time of the person's physical strength and
> functional abilities.

Id. SSR 12-2p outlines two sets of criteria for establishing whether an individual has a medically

determinable impairment of fibromyalgia. Both sets require (1) findings of "[a] history of widespread pain–that is, pain in all quadrants of the body (the right and left sides of the body, both above and below the waist) and axial skeletal pain (the cervical spine, anterior chest, thoracic spine, or low back)–that has persisted (or that persisted) for at least three months" and (2) evidence that other disorders that could have caused the symptoms or signs were excluded. Id. at *2-3.

As to Plaintiff's fibromyalgia, the ALJ stated in his Step Two analysis:

> In addition, the claimant carries the diagnosis of fibromyalgia however, this diagnosis is not in accordance with SSR 12-2p and therefore, is not a medically determinable impairment. However, the claimant's complaints associated with fibromyalgia of widespread pain and fatigue, and the functional limitations resulting therefrom have been considered by the undersigned under the severe impairments of facet joint disease and obesity, and have been taken into account in reaching the conclusions herein.

(R. at 13.)

In her brief, Plaintiff argues that she meets the first set of criteria for establishing fibromyalgia. This first set of criteria requires a finding that the individual has "[a]t least 11 positive tender points on physical examination . . . . The positive tender points must be found bilaterally (on the left and right sides of the body) and both above and below the waist."[7] Id. at *3. In support of her argument, Plaintiff states:

> Throughout the record, which spans from January 2010 to April 2013, Plaintiff has complained of widespread pain that has affected her neck, low back, bilateral legs, hips, and knees. . . . Additionally, Plaintiff has been treated for migraine headaches, osteoarthritis, multiple joint pain, flank pain, and anxiety. . . . Plaintiff also has been

_____

[7] The eighteen (18) tender points are located on each side of the body at the "occiput (base of the skull); low cervical spine (back and side of the neck); trapezius muscle (shoulder); supraspinatus muscle (near the shoulder blade); second rib (top of the rib cage near the sternum or breast bone); lateral epicondyle (outer aspect of the elbow); gluteal (top of the buttock); greater trochanter (below the hip); and inner aspect of the knee." SSR 12-2p, 2012 WL 3104869, at *3.

found to have tenderness on all 18 tender points . . . and consistently has carried the diagnosis of fibromyalgia.

(Plaintiff's Brief at 5.)

After reviewing the record, the undersigned has concluded that it is devoid of evidence that other disorders that could have caused Plaintiff's symptoms or signs were excluded, as is required by SSR 12-2p. As the Administration has stated:

Other physical and mental disorders may have symptoms or signs that are the same or similar to those resulting from FM. Therefore, it is common in cases involving FM to find evidence of examinations and testing that rule out other disorders that could account for the person's symptoms and signs. Laboratory testing may include imaging and other laboratory tests (for example, complete blood counts, erythrocyte sedimentation rate, anti-nuclear antibody, thyroid function, and rheumatoid factor).

SSR 12-2p, 2012 WL 3104869, at *3. Here, Dr. Estigoy is the only medical provider in the record who diagnosed Plaintiff with fibromyalgia. (See R. at 231, 232, 235, 236, 250, 252, 299, 301, 309.) During most, if not all, of her appointments with Dr. Estigoy, Plaintiff complained of experiencing lower bach pain, muscle spasms, pain in her knees and hips, and headaches. (R. at 231, 232, 235, 237, 238, 239, 280, 281, 282, 296, 299, 301, 302.) However, the undersigned notes that while Dr. Estigoy diagnosed Plaintiff with fibromyalgia at some of these visits, he did not diagnose her with that condition at others. (R. at 235, 237, 238, 239, 280, 281, 282, 296, 302.) In fact, during several visits, Dr. Estigoy diagnosed Plaintiff with lower back pain, osteoporosis ,or osteoarthritis. (R. at 235, 280, 281, 282, 295, 296, 302.)

Other medical evidence in the record shows that other disorders that could cause Plaintiff's symptoms or signs have not been ruled out. In July of 2010, Plaintiff saw Dr. Kisner with complaints of pain in her lower back, knees, and legs. (R. at 225-26.) However, Dr. Kisner never diagnosed her with fibromyalgia. On January 7, 2011, Plaintiff went to the emergency department

at Winchester Medical Center after falling on concrete.  She complained of having pain in her lower back with "burning down the right leg, numbness in the left leg."  (R. at 210.)  While there, Plaintiff underwent a CT scan of her lumbar spine.  Dr. Magarik noted some "[m]ild congenital stenosis distal lumbar spine" but "[o]therwise normal study."  (R. at 220, 228.)  Plaintiff was diagnosed with acute lumbar spinal contusion and acute bilateral lower extremity neuropraxia, but was not diagnosed with fibromyalgia.  (R. at 211.)  Three days later, on January 10, 2011, Plaintiff underwent an MRI of her lumbosacral spine.  Dr. Capone noted that the MRI was "[m]ildly abnormal" and demonstrated "bilateral facet hypertrophy . . . at L2-3, L3-4, and L4-5.  The L5-S1 disc has transition features of the sacral region."  (R. at 233.)  On September 15, 2012, Plaintiff presented at the emergency room of WVUH-East with complaints of right flank pain.  (R. at 283.)  She did not state that her past medical history was positive for fibromyalgia.  (Id.)  Plaintiff was discharged with a diagnosis of back pain.  (R. at 284.)  Furthermore, on August 27, 2012, Plaintiff underwent an CT scna of her lumbar spine at City Hospital.  Dr. Blanco noted that Plaintiff had no "[s]ignificant disc abnormality" but did have "[m]oderate facet disease L4-L5."  (R. at 300.)

In her brief, Plaintiff acknowledges that some of the evidence discussed above is dated after her date last insured.  (Plaintiff's Brief at 5.)  "To qualify for DIB, [Plaintiff] must prove that she became disabled prior to the expiration of her insured status."  Johnson v. Barnhart, 434 F.3d 650, 655-56 (4th Cir. 2005) (alterations in original).  To establish a medically determinable impairment, Plaintiff must demonstrate that he has "anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques."  20 C.F.R. § 404.1508.  Impairments "must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [the claimant's statement of symptoms."  Id.

(alteration in original). The Fourth Circuit has stated that "[m]edical evaluations made after a claimant's insured status has expired are not automatically barred from consideration and may be relevant to prove a disability arising before the claimant's [date last insured]." Bird v. Comm'r of Soc. Sec. Admin., 699 F.3d 337, 340 (4th Cir. 2012) (alteration in original) (citing Wooldridge v. Bowen, 816 F.2d 157, 160 (4th Cir. 1987)). Accordingly, "post-DLI medical evidence generally is admissible in an SSA disability determination in such instances in which that evidence permits an inference of linkage with the claimant's pre-DLI condition." Id. at 341. Such "retrospective consideration of medical evidence is especially appropriate when corroborated by lay evidence." Id. at 342.

Dr. Estigoy diagnosed Plaintiff with fibromyalgia prior to her DLI of December 31, 2011. (R. at 12, 236.) According to Plaintiff, "[g]iven that [she] was diagnosed with fibromyalgia prior to her DLI, the tender point examination documented after her DLI is clearly linked to her pre-DLI condition." (Plaintiff's Brief at 5.) Plaintiff is referring to her June 26, 2012 appointment with Dr. Estigoy, where he found "tenderness on all 18 points." (R. at 301.) However, Plaintiff ignores the fact that the record, both pre-DLI and post-DLI, is devoid of evidence showing that other disorders that could cause her symptoms and signs have been excluded, as required by SSR 12-2p. SSR 12-2p, 2012 WL 3104869, at *3. Therefore, contrary to Plaintiff's argument, post-DLI evidence does not support a finding that Plaintiff's fibromyalgia was a medically determinable impairment. Accordingly, although the ALJ did not provide great detail in his discussion, he correctly determined that, pursuant to SSR 12-2p, Plaintiff's fibromyalgia was not a medically determinable impairment at Step Two of the sequential analysis.

## V. RECOMMENDED DECISION

For the reasons above stated, I find that the Commissioner's decision denying the Plaintiff's applications for DIB is supported by substantial evidence. I accordingly recommend the Defendant's Motion for Summary Judgment be **GRANTED**, and the Plaintiff's Motion for Summary Judgment be **DENIED** and this matter be dismissed and stricken from the Court's docket.

Any party may, within fourteen (14) days after being served with a copy of this Report and Recommendation, file with the Clerk of the Court written objections identifying the portions of the Report and Recommendation to which objection is made, and the basis for such objection. A copy of such objections should also be submitted to the Honorable Frederick P. Stamp, Jr., United States District Judge. Failure to timely file objections to the Report and Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Report and Recommendation. 28 U.S.C. § 636(b)(1); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); Thomas v. Arn, 474 U.S. 140 (1985).

The Clerk of the Court is directed to provide a copy of this Report and Recommendation to counsel of record.

Respectfully submitted this _11_ day of _August_ , 2014.

JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE